1 | Blair J. Robinson (*Pro Hac Vice Application Pending*)
  | **BAKER & MCKENZIE LLP**
2 | 425 5th Street
  | New York, NY 10018
3 | Telephone: +1 212 626 4100
  | Facsimile: +1 212 310 1632
4 | blair.robinson@bakermckenzie.com

5 | Stephanie P. Priel (SBN 313085)
  | Lara A. Grines (SBN 316629)
6 | **BAKER & MCKENZIE LLP**
  | 1901 Avenue of the Stars, Suite 950
7 | Los Angeles, CA 90067
  | Telephone: +1 310 201 4728
8 | Facsimile: +1 310 201 4721
  | stephanie.priel@bakermckenzie.com
9 | lara.grines@bakermckenzie.com

10 | Attorneys for Defendant
   | CBS BROADCASTING INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEN PIAZZA; JOEL BINGER; KEVIN BELLOTTI; JIMMY VELARDE; WAYNE GETCHELL; NANCY PERRY; EDWARD NELSON; RON NUGENT; DAVE GOLBA; PETER MALLARD; FREDERICK SMITH; JULIAN SALAS; ROBERTO BOSIO; RICHARD LABGOLD; DENISE STONES; LESLIE NOURSE; LINDA RUSS; JERILYNNE AKUTAGAWA; BARBRA CIMO; SHARON O'DANIEL; JODY LAWRENCE-MILLER; VICKI KAUFMAN; TRACY LAWRENCE; KENNETH LATKA; and MARC BERUTI, | Case No. ___20-cv-2920___<br><br>**DEFENDANT CBS BROADCASTING INC.'S NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>Los Angeles Superior Court Case No. 19STCV42511<br><br>[28 U.S.C. §§ 1331, 1332]<br><br>Complaint Filed: November 27, 2019<br><br>Amended Complaint: January 27, 2020 |
| Plaintiffs, | |
| vs. | |
| CBS BROADCASTING, INC.; TELEVISION CITY STUDIOS, LLC; TELEVISION CITY SERVICES, LLC; TELEVISION CITY PRODUCTIONS, LLC; MICHAEL HACKMAN & ASSOCIATES; HACKMAN CAPITAL PARTNERS, LCC; and DOES 1 through 10, inclusive, | |
| Defendants. | |

1

1    **TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL**
2    **DISTRICT OF CALIFORNIA AND TO PLAINTIFFS AND THEIR**
3    **ATTORNEYS OF RECORD:**

4         PLEASE TAKE NOTICE THAT Defendant CBS Broadcasting Inc. ("CBS")
5    contemporaneously with the filing of this Notice, hereby effects removal of the
6    above-referenced action from the Superior Court in the State of California for the
7    County of Los Angeles to the United States District Court for the Central District of
8    California.  This Court has original subject matter jurisdiction over Plaintiff's
9    lawsuit under 28 U.S.C. §1331 because this civil action arises under the
10   Constitution, laws, or treaties of the United States.  This Court also has original
11   subject matter jurisdiction over Plaintiff's lawsuit under 28 U.S.C. §1332(a)
12   because complete diversity exists and the amount in controversy exceeds $75,000.
13   In support of this removal, CBS states the following:

14   **I.    PROCEDURAL BACKGROUND**

15        1.    On November 27, 2019, Plaintiffs filed a Complaint in the Superior
16   Court of the State of California for the County of Los Angeles, entitled, *Ben*
17   *Piazza; Joel Binger; Kevin Bellotti; Jimmy Velarde; Wayne Getchell; Nancy Perry;*
18   *Edward Nelson; Ron Nugent; Dave Golba; Peter Mallard; Frederick Smith; Julian*
19   *Salas; Roberto Bosio; Richard Labgold; Denise Stones; Leslie Nourse; Linda Russ;*
20   *Jerilynne Akutagawa; Barbra Cimo; Sharon O'Daniel; Jody Lawrence-Miller;*
21   *Vicki Kaufman; Tracy Lawrence; Kenneth Latka; and Marc Beruti, v. CBS*
22   *Broadcasting, Inc.; Television City Studios, LLC; Television City Services, LLC;*
23   *Television City Productions, LLC; Michael Hackman & Associates; Hackman*
24   *Capital Partners, LCC; and Does 1 through 10, inclusive*, Case No.
25   19STCV42511.  Plaintiffs' Complaint alleged the following four (4) causes of
26   action: (1) intentional discrimination (California Government Code §12940(a),
27   12941); (2) disparate impact discrimination (California Government Code
28   §12940(a), 12941); (3) unfair competition law (Business & Professions Code

2

§§17200 *et seq.*); and (4) declaratory relief.  None of the named defendants, including CBS, was served with the original Complaint filed on November 27, 2019.  Attached hereto as **Exhibit A** is a true and correct copy of the original Complaint, Civil Case Cover Sheet, Summons and Complex Civil Case Questionnaire.

2.    On December 17, 2019, the Court issued a Minute Order designating the matter as Complex.  Attached hereto as **Exhibit B** are true and correct copies of the documents relating to the Court's Minute Order re: Complex Designation.

3.    On December 27, 2019, Plaintiffs filed a Notice of Motion and Motion of Peremptory Disqualification to challenge the Honorable Maren M. Nelson, and the Declaration of Wayne S. Kreger, Esq. in Support of said Motion.  Attached hereto as **Exhibit C** are true and correct copies of these documents.

4.    On January 9, 2020, the Court issued a Minute Order regarding the Peremptory Challenge, and reassigned the matter to the Honorable William F. Highberger.  Attached hereto as **Exhibit D** are true and correct copies of these documents.

5.    On January 27, 2020, Plaintiffs filed a First Amended Complaint (referred to herein as the "FAC") which contained the following five (5) purported causes of action: (1) intentional discrimination (California Government Code §12940(a), 12941); (2) disparate impact discrimination (California Government Code §12940(a), 12941); (3) unfair competition law (Business & Professions Code §§17200 *et seq.*); (4) declaratory relief; and (5) retaliation (California Government Code § 12940(h)).  Attached hereto as **Exhibit E** is a true and correct copy of the FAC.

6.    On January 28, 2020, Plaintiffs served Television City Studios, LLC; Television City Services, LLC; Television City Productions, LLC; Michael Hackman & Associates; and Hackman Capital Partners, LCC with the FAC. Attached as **Exhibit F** are true and correct copies of the Proofs of Service as to

these defendants.

7.    On January 28, 2020, Plaintiffs incorrectly attempted service on an entity that was not a registered agent for CBS.  As a result, service was ineffective as to CBS.  Attached as **Exhibit G** is a true and correct copy of the ineffective Proof of Service as to CBS.

8.    On February 6, 2020, the Court issued a Court Order Setting Initial Status Conference.  Attached hereto as **Exhibit H** are true and correct copies of the documents relating to the minute order.

9.    On February 26, 2020, Blair J. Robinson, counsel for CBS, accepted service on behalf of CBS.  Attached hereto as **Exhibit I** is a true and correct copy of these documents.

10.    On March 2, 2020, Mr. Robinson, who is a resident of New York, filed an application to be admitted *pro hac vice*.  Attached hereto as **Exhibit J** are true and correct copies of these documents.

11.    On March 6, 2020, the parties filed a joint Stipulation and Proposed Order to Continue the Initial Status Conference to March 17, 2020.  Attached hereto as **Exhibit K** is a true and correct copy of this document.

12.    On March 9, 2020, the Court granted the Parties' request to continue the Initial Status Conference to March 17, 2020.  Attached hereto as **Exhibit L** is a true and correct copy of the minute order regarding the same.

13.    On March 10, 2020, the parties filed a Joint Status Conference Report. Attached hereto as **Exhibit M** is a true and correct copy of this document.

14.    On March 10, 2020, Catherine A. Conway and Lily Bu entered a Notice of Appearance as counsel for Television City Studios, LLC; Television City Services, LLC; Television City Productions, LLC; Michael Hackman & Associates; and Hackman Capital Partners, LCC (collectively, the "Hackman Defendants"). Attached hereto as **Exhibit N** is a true and correct copy of this document.

15.    On March 25, 2020, Stephanie P. Priel and Lara A. Grines entered a

4

Notice of Appearance in Los Angeles County Superior Court as counsel for CBS. Attached hereto as **Exhibit O** is a true and correct copy of these documents.

16.    On March 26, 2020, CBS filed its Answer in the Superior Court of California, County of Los Angeles.  Attached hereto as **Exhibit P** is a true and correct copy of thi documents.

17.    **Exhibits A-P** constitute all of the documents on file in the state court case.

## II.    REMOVAL IS TIMELY

18.    Mr. Robinson accepted service of the FAC on behalf of CBS, effective February 26, 2020.  This Notice of Removal is therefore timely under 28 U.S.C. §§ 1446(b) because it is being filed within thirty (30) days of completion of service on CBS and within one (1) year of the commencement of this action.  No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## III.    FEDERAL QUESTION JURISDICTION EXISTS

19.    The district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.  28 U.S.C. § 1331. Any civil action brought in a State Court of which the district courts of the United States have original jurisdiction may be removed by the defendant or defendants to the district court of the United States for the district and division embracing the place where such action is pending.  28 U.S.C. § 1441(a).

20.    As set forth below, this is a civil action of which this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). Further, this action also includes claims over which this Court may properly exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), because they form part of the same case or controversy as the claims over which this Court has original jurisdiction.  Accordingly, this entire action is one that may be removed to this Court by CBS pursuant to the provisions of 28 U.S.C. § 1441(b), in that it

1    includes claims arising under the laws of the United States.

2        21.    Whether the claim "arises under" federal law for removal purposes is

3    determined by the "well-pleaded complaint rule" that determines original federal

4    jurisdiction. *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998).

5    Federal courts have "jurisdiction to hear, originally or by removal from a state

6    court, only those cases in which a well-pleaded complaint establishes either that

7    federal law creates the cause of action or that the plaintiff's right to relief

8    necessarily depends on resolution of a substantial question of federal law."

9    *Franchise Tax Bd. of State of Calif. v. Construction Laborers Vacation Trust for*

10   *Southern Calif.*, 463 U.S. 1, 27-28 (1983); *Dennis v. Hart*, 724 F.3d 1249, 1253

11   (9th Cir. 2013).

12       A.    **Plaintiffs' FAC Includes Allegations Regarding The ADEA and**

13           **OWBPA.**

14       22.    While the FAC does not assert causes of action under the Age

15   Discrimination in Employment Act ("ADEA") and the Older Workers Benefits

16   Protection Act ("OWBPA"), the FAC alleges that Plaintiffs intend to bring such

17   claims. Specifically, the FAC alleges: "Plaintiffs received their Right to Sue

18   Letters on November 26, 2019 and will be filing an Administrative Charge(s) with

19   the EEOC as an administrative prerequisite to asserting claims under the ADEA

20   and will file an amended complaint to include claims under the ADEA at the

21   appropriate time." Ex. E, FAC ¶ 47. There is no question that ADEA and OWBPA

22   claims may be removed to federal court because they are cases that could have

23   originally been filed in federal court. 29 U.S.C. § 621, *et seq.*

24       23.    While Plaintiffs' FAC is organized around state law causes of action,

25   the FAC devotes significant detail—over one page—to describing the laws under

26   the ADEA and OWBPA, as well as the remedies provided by the ADEA and

27   OWBPA. Ex. E, FAC ¶¶ 42-44. Indeed, the failure to state a claim under federal

28   law is not dispositive to the question of whether federal subject matter jurisdiction

exists.  *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 318 (2005).  "[T]he absence of a federal private right of action . . . [is] relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires."  *Id.*  A plaintiff may not avoid federal jurisdiction by omitting from the complaint federal law essential to the plaintiff's claim, or by casting in state law terms a claim that can be made only under federal law.  *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 344 (9th Cir. 1996).

24.    The distinction between whether a complaint states a cause of action and whether it is sufficient to raise federal question jurisdiction to trigger removal is illustrated in *Cervantes v. Bexar County Civil Service Commission*, 99 F.3d 730 (5th Cir. 1996).  In *Cervantes*, the plaintiff's amended complaint brought claims pursuant to state law, but also alleged that the plaintiff was "entitled to the affirmative relief he seeks . . . pursuant to . . . Title 42 of the United States Code, Section 1983."  *Id.* at 733.  The court held that "[a]lthough [the plaintiff] did not elaborate on his theory of recovery under section 1983, his failure in this regard is not sufficient to defeat the subject matter of the district court."  *Id.*  The court reasoned as follows: "First, there is no question that section 1983 cases filed in state court may be removed to federal court because they are cases that could have originally been filed in federal court . . . .  Second, this court has held that the scope of federal subject matter jurisdiction is broader than the existence of a cause of action . . . .  Therefore, even if [the plaintiff's] pleading was insufficient to state a section 1983 claim upon which relief could be granted, it was not insufficient to create federal subject matter jurisdiction in this court."  *Id.  See also Holland/Blue Streak v. Barthelemy*, 849 F.2d 987, 988 (1988) ("A federal court may have subject matter jurisdiction even though the complaint fails to state a claim for which relief can be granted.").

25.    Likewise, in *Inguez v. Vatinum Capital, Inc.*, 2013 U.S. Dist. LEXIS 41776, at *7-9 (N.D. Cal. Mar. 25, 2013), the complaint asserted only state causes

of action but also discussed federal statutes and indicated that defendants violated those statutes. The court rejected plaintiff's attempt to avoid removal: "the pleading is a masterpiece of trying to have it both ways. For purposes of defeating removal, the pleader purported to allege only state law claims focusing on overall organization for claim for relief. For purposes of adding federal strings to a state bow, however, the pleader embedded alleged federal violations throughout the document." *Id.* Accordingly, the court held that the complaint was deemed to allege federal claims for relief and satisfied federal removal jurisdiction. *Id.*

26.    Here, like in *Inguez*, the FAC is a "masterpiece of trying to have it both ways." The FAC includes substantial references to federal statutes and remedies under the ADEA and OWBPA, and Plaintiffs argue that Defendant violated those laws. Plaintiffs cannot have it both ways.

**B.    The FAC's References to Federal Law Are Substantial.**

27.    Here, the FAC's references to federal law are not immaterial. On the contrary, the FAC dives deep into the intricacies of the ADEA and OWBPA laws and its remedies, and unequivocally alleges Plaintiffs' intent to pursue claims under the ADEA and OWBPA. Ex. E, FAC ¶¶ 42-44. For example, the FAC provides a history of the ADEA, stating "Congress passed the Age Discrimination in Employment Act (ADEA) of 1967 to address the practice of employment discrimination against older workers . . . The ADEA prohibits discrimination in employment against workers age 40 or older and makes it unlawful for an employer to discharge any individual or otherwise to discrimination against any individual with respect to his or her compensation, terms, conditions or privileges of employment." *Id*. ¶ 42. The FAC then states "[t]he ADEA incorporate the enforcement and remedial provisions of the Fair Labor Standards Act ("FLSA"). FLSA remedies include awards for backpay, reinstatement or front pay." *Id*. ¶ 43. Finally, the FAC describes the OWBPA, stating "[t]he OWBPA mandates strict, minimum requirements for employers to obtain a valid waiver of 'any right or

claim' under the ADEA when workers are let go in a group layoff.  Among other pre-requisites for valid waivers, the employer must provide critical information to help laid-off workers determine whether they have been discriminated against as a group because of their age." *Id*. ¶ 44.

28.    Given the FAC's thorough discussion of the statutory history of the ADEA and OWBPA, it is apparent that the "face" of the complaint raises a federal question. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (explaining that federal jurisdiction exists where a federal question "is presented on the face" of a complaint).  Moreover, that the FAC references remedies under the ADEA and OWBPA only further confirms that a federal question exists.

**C.    On March 16, 2020 and On March 24, 2020, Plaintiffs Reiterated Their Intent to Pursue the ADEA Claims.**

29.    Plaintiffs confirmed their intent to assert federal law age discrimination claims on March 25, 2020.  Specifically, Mr. Kreger confirmed to Blair Robinson, counsel for CBS, that he would not amend the complaint to remove the ADEA or OWBPA allegations.  Declaration of Blair Robinson, ¶ 2.  Plaintiffs' attempt to have it both ways should be denied—Plaintiffs cannot avoid federal court jurisdiction by waiting for the removal deadline to pass before amending their complaint to assert causes of action based on federal law.  *See ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Montana*, 213 F.3d 1108, 1114 (9th Cir. 2000) (a plaintiff may not defeat removal by omitting from a pleading any necessary federal questions).

**IV.    DIVERSITY OF CITIZENSHIP JURISDICTION EXISTS**

**A.    Removal Pursuant to U.S.C. § 1332(A)(1) Is Proper.**

30.    This is also a civil action over which this Court has original diversity jurisdiction pursuant to 28 U.S.C. § 1332, and this matter may be removed to this Court under the provisions of 28 U.S.C. §§ 1441(a) and (b) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action

9

involves citizens of different states.

31.     Complete diversity exists under 28 U.S.C. § 1332 between Plaintiffs and CBS because Plaintiffs and CBS are citizens of different states, and the Hackman Defendants are improperly named and fraudulently joined parties to the underlying action.

### B.     Plaintiffs Are Citizens of California.

32.     "An individual is a citizen of the state in which he is domiciled." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)).  For purposes of diversity jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed.  *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).  A person's domicile is the place he or she resides with the intention to remain, or to which he or she intends to return.  *See Kanter v. Warner–Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  Evidence of continuing residence creates a presumption of domicile.  *Washington v. Hovensa LLC*, 652 F.3d 340, 345 (3rd Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994).

33.     At the time Plaintiffs commenced this action and at the time of removal, Plaintiffs were citizens of the State of California.  In fact, each of the named Plaintiffs alleges in the FAC that he or she is "an individual and a citizen of the . . . State of California."  *See* Ex. E, FAC ¶¶ 8-32.  Therefore, Plaintiffs are now and were at the time of the filing of the FAC, citizens of California.

### C.     Defendant CBS Is a Citizen of New York.

34.     For purposes of diversity, a corporation is deemed to be a citizen of (1) the state under whose laws it is organized; and (2) the state of its "principal place of business."  28 U.S.C. § 1332(c)(1).  The "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities . . . in practice it should normally be the place where the corporation

maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings."  *See Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1192 (2010).

35.    At the time Plaintiffs commenced this action and at the time of removal, Defendant CBS was and is a corporation organized under the laws of New York, with its principal place of business in New York as well.  Declaration of Kevin Oldis ("Oldis Decl."), ¶ 2.  CBS' officers direct, control, and coordinate the corporation's activities primarily from New York, and CBS' corporate headquarters and principal place of business are located at 51 West 52nd Street, New York, New York.  *Id.* ¶ 3.

36.    Based on the aforementioned facts, CBS is and, at all times relevant, was a citizen of the State of New York for purposes of determining diversity jurisdiction.  28 U.S.C. § 1332(c)(1).

**D.    The Hackman Defendants Are Sham Defendants And Their Presence Should Be Ignored For Purposes Of Determining Diversity.**

37.    "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for the purposes of determining diversity, if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (internal quotation marks omitted).  The defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent.  *Smith v. Southern Pacific Co.*, 187 F.2d 397 (9th Cir. 1951).  In determining fraudulent joinder, a trial judge may "pierce the pleadings" and consider summary judgment-type evidence in the record.  *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003); *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012).

38.     A defendant need not prove that joinder was for the purpose of preventing removal; rather, the question is simply whether there is a possibility that plaintiff will be able to establish liability against the party in question. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-1319 (9th Cir. 1998).  "[A] non-diverse defendant is deemed a sham defendant if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." *See Narayan v. Compass Group USA, Inc*., 284 F.Supp.3d 1076, 1084 (E.D. Cal. 2018).  Likewise, a non-diverse defendant is deemed a sham if there is no intention to get a joint judgment. *Charlin v. Allstate Ins. Co.*, 18 F. Supp. 2d 1137, 1140 (C.D. Cal. 1998).

39.     In the FAC, the only cause of action asserted against the Hackman Defendants is the fourth cause of action for Declaratory Relief.  Ex. E, FAC, ¶ ¶ 84-85.  Plaintiffs' allegations in the FAC cannot support a claim for declaratory relief.  Declaratory relief is a procedural device used by the courts to declare the legal relationship between the parties. *Mycogen Corp. v. Monsanto Co*., 28 Cal. 4th 888, 898 (2002).  Specifically, a declaratory judgment action "may be brought to establish rights once a conflict has arisen . . . or as a prophylactic measure before a breach occurs." *Id.*  Declaratory relief is inappropriate where the matter lacks "urgency and definiteness." *BKHN, Inc. v. Dept. of Health Servs.*, 3 Cal. App. 4th 301, 309-10 (1992) (dismissing declaratory relief cause of action where the "instant matter likewise lacks the urgency and definiteness necessary to warrant declaratory relief" and "there is no definitive and conclusive relief which could be granted.")

40.     Here, declaratory relief is inappropriate—and was done for no purpose other than to destroy diversity of citizenship—because Plaintiffs' allegations in the FAC relate to a past conflict (*i.e.*, whether the Plaintiffs were discriminated against when they were not offered a buyout).  Plaintiffs attempt to dodge this fatal flaw by alleging that "a dispute has arisen and an actual controversy now exists between all

1   Plaintiffs on the one hand and all Defendants on the other hand, with respect to
2   CBS' wrongful and intentional discrimination against Plaintiffs on the basis of their
3   ages by denying them access to the buyout." Ex. E, FAC, ¶ 84.  It cannot be
4   denied, however, that the Hackman Defendants were fraudulently joined to prevent
5   diversity of citizenship.  The gravamen of the FAC is that Plaintiffs were allegedly
6   discriminated against when "CBS offered a lucrative buyout to all of its
7   employees," but not to Plaintiffs.  *Id.* ¶ 4.  Plaintiffs do not (because they cannot)
8   allege that Hackman discriminated against them in not offering them a buyout.  In
9   fact, Plaintiffs do not allege that Hackman took *any* discriminatory action
10  whatsoever against Plaintiffs.  *See City of Cotati v. Cashman*, 29 Cal. 4th 69, 80
11  (2002) (explaining that a "request for declaratory relief will not create a cause of
12  action that otherwise does not exist."); *BKHN, Inc. v. Dept. of Health Servs.*, 3 Cal.
13  App. 4th 301, 309-10 (1992) (dismissing declaratory relief cause of action where
14  the "instant matter likewise lacks the urgency and definiteness necessary to warrant
15  declaratory relief" and "there is no definitive and conclusive relief which could be
16  granted"); *State Farm Fire & Cas. Co. v. Sup. Ct.*, 191 Cal. App. 3d 74, 76 (1987)
17  ("[W]here the facts relied on by plaintiff do not support a declaration in his favor as
18  a matter of law, demurrer is proper.").

19          41.    Thus, all that is left in the declaratory relief cause of action is
20  Plaintiffs' unrelated, false, and past-tense allegations that: (1) the Hackman
21  Defendants required the Plaintiffs to sign a document averring that they will not
22  "take any action," including this lawsuit ; (2) the Hackman Defendants refused to
23  acknowledge disability claims commenced by Plaintiffs during their employment
24  with CBS; and (3) the Hackman Defendants "stonewalled" Plaintiffs' attempts to
25  communicate with Human Resources about their basic employment rights.  Ex. E,
26  FAC, ¶ 84.  These allegations, which form the basis of the declaratory relief claim
27  against the Hackman Defendants, have no logical connection to the factual
28  allegations in the FAC.  And, on this basis alone, Plaintiffs seek a declaration from

this Court as to the "respective rights, duties, and obligations of all Defendants. *Id.* ¶ 85. Such conclusory allegations cannot support a claim for relief. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (holding that courts are not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

42. Moreover, while the FAC does not clarify what the conclusory "respective rights, duties, and obligations" consist of, the employment relationship between Plaintiffs and Hackman is clear: Hackman has employed Plaintiffs since January 1, 2020. Ex. E, FAC ¶ 3. Because there is no conflict regarding that relationship, declaratory relief is improper. *Cf. Mycogen Corp.*, 28 Cal. 4th at 898 (declaratory judgment is appropriate when a conflict has arisen). It is obvious that Plaintiffs do not intend to obtain a joint judgment against the Hackman Defendants, and that the allegations regarding past actions and harm caused by the buyout do not present a sense of "urgency and definiteness" that is the foundation of a declaratory judgment action. *See Cnty. of San Diego v. State of California*, 164 Cal. App. 4th 580, 607 (2008) (explaining that declaratory relief operates prospectively to declare future rights, rather than to redress past wrongs) (internal quotations omitted)); *Shumake v. Caliber Home Loans, Inc.*, 2017 U.S. Dist. LEXIS 2928, at *18-19 (C.D. Cal. Jan. 6, 2017) (dismissing declaratory relief claim with prejudice where complaint did not show a "controversy of concrete actuality") (citing *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 513-14 (2013)).

43. Accordingly, because based on the allegations of the FAC as pleaded, the Hackman Defendants are sham defendants, the Court should disregard the Hackman Defendant's citizenship for purposes of determining whether diversity jurisdiction exists.

**E.    The Amount in Controversy Requirement is Satisfied.**

44. Diversity jurisdiction exists "where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332.

The amount in controversy is determined from the allegations of the Complaint. *Campbell v. Vitran Express, Inc.*, 471 Fed. Appx. 646, 648 (9th Cir. 2012). "In assessing the amount in controversy, a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Id.* (citing *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).

45.     CBS denies the validity and merit of all of Plaintiffs' claims, the legal theories upon which they are purportedly based, and the claims for monetary and other relief that flow from them. However, for purposes of removal only, and without conceding that Plaintiffs are entitled to any damages or penalties, assuming, *arguendo*, the truth of Plaintiffs' allegations, it is readily apparent that Plaintiffs' claims establish an amount "in controversy" in excess of the jurisdictional minimum of $75,000, exclusive of interest and costs, as required by 28 U.S.C. section 1332.

46.     From the face of the FAC, the amount in controversy in this action exceeds $75,000, exclusive of interests and costs. Plaintiffs allege that they should have received the buyout offer and their exclusion from it was a result of age-based discrimination. Ex. E, FAC, ¶ 52. The FAC further alleges that on average each of the twenty-five Plaintiffs in this case would be entitled to approximately $150,000 per the buyout offer. *Id*. Since there are twenty-five Plaintiffs in this action, the total damages the Plaintiffs are seeking are approximately $3,750,000. Thus, the Plaintiffs' alleged damages exceed the $75,000 jurisdictional requirement.

### 1.     Attorneys' Fees.

47.     Plaintiffs' FAC also seeks attorneys' fees. Ex. E, FAC, Prayer for Relief. Cases involving the types of claims Plaintiffs have alleged in their FAC require at least $75,000 in attorneys' fees to proceed through discovery and to trial during an approximate one-year period. The attorneys' fee claim is included in determining the amount in controversy when, as in the case at hand, Plaintiffs are

claiming attorneys' fees pursuant to statute. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998); *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) (in deciding amount in controversy issue, court may estimate the amount of reasonable attorneys' fees likely to be recovered by plaintiff if she were to prevail).

48.     To date, Plaintiffs have certainly incurred fees and costs in connection with preparing and filing their original Complaint and the FAC. In fact, at an assumed rate of $300 per hour, Plaintiff's counsel would need to spend only 250 hours of attorney time (a conservative estimate of time spent through trial) to incur $75,000 in reasonable attorney's fees (250 hours x $300 = $75,000).

### 2.    Punitive Damages.

49.     Plaintiffs also seek an award of punitive damages. Ex E, FAC, ¶¶ 65, 74, 82, 96, and Prayer for Relief. Under California law, punitive damages may be recovered by a plaintiff "[i]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). Punitive damages are included in calculating the amount in controversy. *See Davenport v. Mutual Ben. Health & Acc. Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963); *see also Aucina v. Amoco Oil Co.*, 871 F.Supp. 332 (S.D. Iowa 1994). A single-digit ratio (i.e., no more than nine-to-one) is typically appropriate when issuing an award of punitive damages. *State Farm vs. Campbell*, 538 U.S. 408, 425 (2003).

50.     California verdicts often include substantial punitive damage awards in employment discrimination actions. *Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1033 (N.D. Cal. 2002) ("verdicts in these cases amply demonstrate the potential for large punitive damage awards in employment discrimination cases"); *see also Aucina v. Amoco Oil Co.*, 871 F.Supp. 332, 334 (S.D. Iowa 1994) ("[b]ecause the purpose of punitive damages is to capture the defendant's attention and deter others

from similar conduct, it is apparent that the plaintiff's claim for punitive damages alone might exceed [the jurisdictional amount]").

51.     Plaintiffs do not limit the amount of damages they are seeking. Considering the aggregate value of Plaintiffs' claims (i.e., compensatory damages, attorneys' fees, and punitive damages), the alleged amount in controversy well exceeds $75,000.

52.     Based on the allegations of the Complaint and the Notice of Removal, removal is proper because it is more likely than not that Plaintiffs' claims exceed $75,000. *Sanchez*, 102 F.3d at 403-04; *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).  Accordingly, the amount in controversy requirement of 28 U.S.C. §1332 has been met, and this action is removable to this Court pursuant to 28 U.S.C. §1441.

## V.     THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED.

53.     Venue is proper in this district pursuant to 28 U.S.C. § 1441(a), because this district embraces the county in which the removed action has been pending.

54.     CBS will promptly serve Plaintiffs with this Notice of Removal and will promptly file a copy of this Notice of Removal with the clerk of the Superior Court, as required under 28 U.S.C. § 1446(d).

55.     If any questions arise as to the propriety of the removal of this action, CBS respectfully requests the opportunity to present a brief and oral argument in support of its position that this case is properly removed.

**WHEREFORE**, CBS respectfully requests that this action be removed from the Superior Court of the State of California in and for the County of Los Angeles to the United States District Court for the Central District of California, and that all future proceedings in this matter take place in the United States District Court for the Central District of California.

1

Dated:  March 27, 2020                BAKER & MCKENZIE LLP

2

3                                      By: */s/ Stephanie P. Priel*

4                                          Blair J. Robinson
                                           Stephanie P. Priel
5                                          Lara A. Grines
                                           Attorneys for Defendant
6                                          CBS BROADCASTING INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT CBS BROADCASTING INC.'S NOTICE OF REMOVAL