Name: WAYNE S. KREGER, ESQ./ LAW OFFICES OF WAYNE KREGER
Address: 100 WILSHIRE BOULEVARD, SUITE 700
City, State, Zip: SANTA MONICA, CALIFORNIA 90401
Phone: 310-917-1083
Fax: 310-917-1001
E-Mail: wayne@kregerlaw.com

☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☒ Retained

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

BEN PIAZZA, et. al.,

PLAINTIFF(S),

v.

CBS BROADCASTING, INC.

DEFENDANT(S).

CASE NUMBER:

20-CV-2920 DSF

**NOTICE OF APPEAL**

NOTICE IS HEREBY GIVEN that ___PLAINTIFFS BEN PIAZZA, et. al.,___ hereby appeals to
*Name of Appellant*
the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):
   Order GRANTING Defendant's
   Motion for Summary Judgment [Dkt 71]

☒ Judgment (specify):
   Judgment for Defendant [Dkt 72]

☐ Other (specify):

Imposed or Filed on ___MAY 24, 2022___. Entered on the docket in this action on ___MAY 24, 2022___.

A copy of said judgment or order is attached hereto.

JUNE 21, 2022
Date

Signature
☐ Appellant/ProSe   ☒ Counsel for Appellant   ☐ Deputy Clerk

Note: The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party. Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEN PIAZZA, et al., <br> Plaintiffs, <br><br> v. <br><br> CBS BROADCASTING, INC. et al., <br> Defendants. | CV 20-2920 DSF (ASx) <br><br> Order GRANTING Defendant's Motion for Summary Judgment (Dkt. 58) |

    Defendant CBS Broadcasting, Inc. moves for summary judgment on the claims asserted by Plaintiffs Ben Piazza, Joel Binger, Kevin Bellotti, Jimmy Velarde, Wayne Getchell, Nancy Perry, Edward Nelson, Ron Nugent, Dave Golba, Peter Mallard, Frederick Smith, Julian Salas, Roberto Bosio, Richard Labgold, Denise Stones, Leslie Nourse, Linda Russ, Barbra Cimo, Sharon O'Daniel, Jody Lawrence-Miller, Vicki Kaufman, Tracy Lawrence, and Marc Beruti (collectively, Plaintiffs). Dkt. 58-1 (Mot.). Plaintiffs oppose. Dkt. 65 (Opp'n). The Court deems these matters appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. The motion for summary judgment is GRANTED.

## I. UNDISPUTED FACTS

    This case arises out of CBS's sale of Television City to Hackman Capital Partners, a real estate investment and operating company.

UF ¶ 71.[1]  Plaintiffs were long-time employees of CBS and worked in various production and operation roles.  Id. ¶¶ 1-69.  In 2018, CBS began discussions to sell Television City to Hackman.  Id. ¶ 71.  Through the resulting agreement (Purchase Agreement) between CBS and Hackman, Hackman purchased the Television City production facility and business.  Id. ¶¶ 72-73.  The Purchase Agreement required CBS to transfer production and facility management personnel to Hackman so that productions at Television City could continue without interruption after the sale.  Id. ¶ 75.  The Employee Matters Agreement (EMA), which governed the transfer of employees to Hackman, took effect January 31, 2019.  Id. ¶ 76.  According to the EMA, the employees to be transferred were "each and every employee employed by CBS who devotes all, or at least a significant portion, of his working time for CBS in areas characterized as stage production and facility management in connection with the operation of the Transferred Operations . . . as well as any New Business Employee."  Id.  New Business employees were employees who devoted all or at least a significant portion of their time to stage production or facility management.  Id.

Michael Klausman, president of CBS Studio Center and executive vice president of West Coast operations, and Glenn Oakley, executive vice president of Operations and Engineering at CBS, were involved in the negotiation of the EMA.  Id. ¶¶ 78-80.  Klausman relied on his direct reports, Tim Wong, Erik Breiter, and Carlos Olvera, to help determine which employees worked on production or facilities management at Television City.  Id. ¶ 85.  Oakley agreed to allow Klausman to take Plaintiffs with him when Klausman went to work for

---

[1] Citations to UF refer to Plaintiffs' Separate Statement, dkt. 65-1, which incorporates CBS's proposed uncontroverted facts and Plaintiffs' responses to those facts.  Where the Court cites to a disputed fact, the Court has found the dispute was not valid or was irrelevant, unless otherwise indicated.  The Court has independently considered the admissibility of the evidence and has not considered facts that are irrelevant or based on inadmissible evidence.

Hackman, where he would continue running the Television City facility and business. Id. ¶¶ 83, 87.

Plaintiffs, along with approximately 200 other full-time employees, were transferred to Hackman on the sale date of January 31, 2019, after which they were subject to Hackman's management and direction. Id. ¶¶ 91, 103. However, CBS continued to employ Plaintiffs and the other transferred employees until December 31, 2019, after which they "moved over to Hackman's employ and payroll." Id. ¶ 92. After they were transferred, each plaintiff continued to work in the same position, performed the same job duties, and earned the same salary. UF ¶¶ 104-44.

In February 2019, CBS announced it was offering qualifying employees the option of CBS voluntarily "buying-out" their contracts. Id. ¶¶ 93, 95. CBS was offering a voluntary buyout (VBO) for employees whose combined age and length of service exceeded 80. Id. ¶ 95. The criteria of age and length of service was used to manage, from a cost standpoint, the number of employees who would be eligible for the VBO. Id. ¶ 96. Pursuant to CBS's contract with Hackman, those being transferred to Hackman were not eligible for the VBO. Id. ¶¶ 97-99.

Plaintiffs do not know which individuals were involved in making the decision to transfer them to Hackman or regarding the VBO, except that Bosio and Cimo stated they believe Klausman made the decision to transfer them to Hackman. Id. ¶¶ 145-89. The individuals responsible for deciding which employees to transfer to Hackman were not involved in creating the VBO, though they may have had notice of which employees were to be transferred to Hackman. Id. ¶¶ 100-02.

## II. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

3

law." Fed. R. Civ. P. 56(a). "This burden is not a light one." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). But the moving party need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial. Id. at 323-24; Fed. R. Civ. P. 56(c)(1). A non-moving party who bears the burden of proof at trial as to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. See Celotex Corp., 477 U.S. at 322.

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. Id. at 250-51. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury . . . could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict . . . ." Id. at 252. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992). Summary judgment is improper 'where divergent ultimate inferences may reasonably be drawn from the undisputed facts.'" Fresno Motors v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014). Instead, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (simplified).

4

## III. DISCUSSION

### A. Intentional Discrimination Under FEHA

#### 1. McDonnell Douglas Framework

FEHA prohibits discrimination by an employer because of certain characteristics, including age and race. Cal. Gov't. Code § 12940(a). In analyzing discrimination claims under FEHA, California courts apply the three-stage burden-shifting approach established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Under the McDonnell Douglas test, the plaintiff first bears the burden of establishing a prima facie case, which raises a presumption of discrimination. Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 354-55 (2000). The burden then shifts to the employer to rebut this presumption by producing admissible evidence sufficient to show that "its action was taken for a legitimate, nondiscriminatory reason." Id. at 355-56.

If the employer meets its burden, the presumption established in the first step disappears, and the plaintiff must raise a triable issue suggesting that the employer's proffered reason is mere pretext for unlawful discrimination or offer other evidence of discriminatory motive. Id. at 356. To satisfy this burden and survive summary judgment, Plaintiffs "must raise a genuine factual issue as to whether the articulated reason was a mere pretext for discrimination." Phillips v. PacifiCorp, 304 F. App'x 527, 530 (9th Cir. 2008).

When an employer moves for summary judgment, however, "the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden." Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1242 (9th Cir. 2013) (alteration in original) (quoting Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 745 (9th Cir. 2011)). "Thus, to prevail on summary judgment, the employer is required to show either that (1) plaintiff could not establish one of the elements of the FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment." Id. (brackets omitted). "If the employer meets its

5

burden, the discharged employee must demonstrate either 'that the defendant's showing was in fact insufficient or . . . that there was a triable issue of fact material to the defendant's showing." Id. (alteration in original).

To establish a prima facie case of discrimination under FEHA, Plaintiffs must establish (1) they are members of a protected class; (2) they were performing competently in the position they held; (3) they suffered an adverse employment action, such as termination; and (4) "some other circumstance suggests discriminatory motive." Guz, 24 Cal. 4th at 355.

"While the plaintiff's prima facie burden is 'not onerous,' [s]he must at least show 'actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were' based on a [prohibited] discriminatory criterion . . ." Guz, 24 Cal. 4th at 355 (alterations in original) (citation omitted); see also Reynaga v. Rosenburg Forest Prods., 847 F.3d 678, 691 (9th Cir. 2017) ("We require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can only be resolved through a searching inquiry – one that is most appropriately conducted by the fact finder, upon a full record.") (simplified)).

It is undisputed that Plaintiffs are all members of a protected class and that they were performing their jobs competently. Mot. at 9; Opp'n at 8. Instead, CBS argues Plaintiffs did not suffer an adverse employment action and that there is no suggestion of discriminatory motive. Mot. at 9.

### 2. Adverse Employment Action

An adverse employment action affects the "terms, conditions, or privileges of employment." Cal. Gov't. Code § 12940(a). The term "adverse employment action" "must be interpreted liberally and with a reasonable appreciation of the realities of the workplace in order to afford employees the appropriate and generous protection against employment discrimination that the FEHA was intended to provide."

6

Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1054 (2005). But not every change in the conditions of employment constitutes an adverse employment action. Malais v. L.A. City Fire Dep't, 150 Cal. App. 4th 350, 358 (2007). "[T]he mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." Thomas v. Dep't of Corr., 77 Cal. App. 4th 507, 511 (2000). A plaintiff must show the employer's actions "had a detrimental and substantial effect on the plaintiff's employment." McRae v. Dep't of Corr. & Rehab., 142 Cal. App. 4th 377, 386 (2006). The "materiality" test for an adverse employment action looks to "the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career," and stating the test "must be interpreted liberally . . . with a reasonable appreciation of the realities of the workplace." Yanowitz, 36 Cal. 4th at 1054.

CBS argues Plaintiffs suffered no adverse employment action because Plaintiffs' transfer to Hackman did not change their job duties or the terms of their employment. Mot. at 9-10. After they were transferred, each Plaintiff continued to work in the same position, performed the same job duties, and earned the same salary. UF ¶¶ 104-44. CBS also argues that Plaintiffs Cimo, Labgold, Nourse, and O'Daniel experienced no changes at all because they were never employed by Hackman as they retired in 2019, before they became Hackman employees after they moved to Hackman's payroll on December 31, 2019. Mot. at 10; UF ¶ 92. CBS has met its burden of demonstrating Plaintiffs cannot establish they suffered an adverse employment action.

However, several Plaintiffs testified that after the transfer, their health benefits and pension eligibility changed; specifically, they testified that the new health benefits were inferior to and cost more than their prior benefits package, and that Hackman would not contribute to Plaintiffs' and other transferred employees' pension. See, e.g., UF ¶¶ 104, 108, 110, 113, 117, 120, 122. A reasonable jury could find these changes to the terms of Plaintiffs' employment were both

substantial and detrimental. However, for the reasons explained below, the Court finds Plaintiffs cannot establish a prima facie case of disparate treatment because they have not raised any triable issues as to the fourth prong.

### 3. Discriminatory Motive

To establish a prima facie case, "the plaintiff must produce evidence sufficient to show that an illegitimate criterion was a *substantial factor* in the particular employment decision." Harris, 56 Cal. 4th at 232. The requisite degree of causation is higher than a "motivating factor" and lower than the "but for cause." Id. Plaintiffs can meet this prong of the prima facie analysis by demonstrating "similarly situated individuals outside [their] protected class were treated more favorably, *or* other circumstances surrounding the adverse employment action give rise to an inference of discrimination." Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1156 (9th Cir. 2010) (emphasis added) (brackets in original).

CBS argues that Plaintiffs cannot establish any similarly situated individuals outside their protected class were treated more favorably because Plaintiffs point to only one individual who was treated more favorably than they, but that individual was 66 years old at the time of the sale and was therefore *inside* of Plaintiffs' protected class. Mot. at 11 (citing UF ¶ 237). Moreover, Plaintiffs, with the exception of Kaufman,[2] have not identified anyone younger than they (and presumably outside of the protected class) who was treated more favorably. See UF ¶ 215-36.

---

[2] Kaufman testified that one individual who was younger than she stayed at CBS and was not transferred to Hackman. UF ¶ 221. CBS contends that individual was in fact transferred to Hackman, and Plaintiffs do not provide any evidence to dispute this, merely stating they do not "have the requisite information with which to dispute or to not dispute this asserted fact," id. ¶ 222, a statement that is entirely unhelpful at the summary judgment stage.

8

CBS also argues Plaintiffs have not pointed to any evidence of discriminatory animus in either the decision to transfer them to Hackman or the decision to exclude them from the VBO other than their subjective belief, which is insufficient to raise a triable issue. Mot. at 12-14. The Court agrees. The Ninth Circuit has repeatedly "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Plaintiffs' Opposition does not cite to any purported evidence of discriminatory animus, and Plaintiffs' only evidence appears to be their own testimony that they believed the reason they were discriminated against was that they were transferred and made ineligible for the VBO. UF ¶¶ 190-214. Plaintiffs argue this testimony is not the only reason for their belief that they were discriminated against due to their age, but merely state without any support that "Defendant knew nobody in Hollywood hires people over 60." See id.

The Court finds CBS has met its burden of establishing Plaintiffs cannot prove evidence of a discriminatory motive, and Plaintiffs have failed to raise a triable issue. Therefore, Plaintiffs cannot establish a prima facie case.

## B. Disparate Impact Under FEHA

In order to prevail on a disparate impact claim under FEHA, a plaintiff must prove that a challenged employment policy or practice, while facially neutral, had a disparate impact on employees in a protected group. Katz v. Regents of the Univ. of Cal., 229 F.3d 831, 835 (9th Cir. 2000). "To state a prima facie case under a disparate impact theory, a plaintiff must demonstrate (1) the occurrence of certain outwardly neutral employment practices, and (2) a significantly adverse or disproportionate impact on persons of a particular [age] produced by the employer's facially neutral acts or practices." Id. (internal quotation omitted).

Once a plaintiff has established a prima facie case, the burden shifts to the defendant, who may either (1) "discredit the plaintiff's

9

statistics or proffer statistics of [its] own which show that no disparity exists[, or (2)] produce evidence that its disparate employment practices are based on legitimate business reasons, such as job-relatedness or business necessity." Rose, 902 F.2d at 1424. "Thereafter, the plaintiff must show that other tests or selection devices, without a similarly undesirable [discriminatory] effect, would also serve the employer's legitimate interest in efficient and trustworthy workmanship." Id. (internal quotations omitted) (alteration in original).

Plaintiffs identify two employment practices that they argue had a disparate impact on older employees: (1) the transfer of older employees to Hackman, and (2) the offer of a VBO based on age and term of service. Opp'n at 11. CBS argues Plaintiffs cannot establish a prima facie case because they have not identified a specific policy that forms the basis of their disparate impact claim. Mot. at 20.

To establish discrimination based on disparate impact, a plaintiff is responsible "for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities." Smith v. City of Jackson, Miss., 544 U.S. 228, 241 (2005). In Smith, the Supreme Court held the plaintiffs failed to identify a specific practice being challenged and rejected imposing liability for a pay plan in general because it could "result in employers being potentially liable for the myriad of innocent causes that may lead to statistical imbalances." Id. at 241. The Court stated plaintiffs had "done little more than point out that the pay plan at issue [was] relatively less generous to older workers than to younger workers . . . [and] ha[d] not identified any specific test, requirement, or practice within the pay plan that has an adverse impact on older workers." Id. The Court also noted the pay plan at issue was based on reasonable factors other than age. Id.

The Ninth Circuit has also rejected challenges to a defendant's overall decision-making processes. In Stout v. Potter, postal inspectors challenged the promotion process. 276 F.3d 1118, 1121 (9th Cir. 2002). The Ninth Circuit held that by merely attacking "the decisionmaking process" or "the process by which the [screening] Panel evaluated

10

applications," the plaintiffs failed to identify a "specific employment practice or selection criterion." Id. at 1124. The court stated,

> Plaintiffs generally cannot attack an overall decisionmaking process in the disparate impact context, but must instead identify the particular element or practice within the process that causes an adverse impact. A decisionmaking process may be analyzed as a single employment practice if the complaining party can demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis.

Id.

The Court agrees Plaintiffs have not sufficiently identified a specific employment practice to meet their burden at this stage; they challenge the transfer of employees to Hackman and the VBO generally. See Bagwell v. CBS Broad. Inc., No. CV 19-8423 DSF (ASX), 2021 WL 2497949, at *12 (C.D. Cal. May 7, 2021) (granting summary judgment on disparate impact claim based on CBS-Hackman transfer and VBO); see also Watson v. Fort Worth Bank & Tr., 487 U.S. 977, 982 (1988) ("[S]ubjective or discretionary employment practices may be analyzed under the disparate impact approach"); Durante v. Qualcomm, Inc., 144 F. App'x 603, 606-07 (9th Cir. 2005) ("[A]n overall decisionmaking process may be subject to a disparate impact challenge if the employer utilizes an 'undisciplined system of subjective decisionmaking.'"). But Plaintiffs attack only CBS's processes in general and have not identified "any specific test, requirement, or practice" that CBS employed in the transfer to Hackman. Smith, 544 U.S. at 241; see also Freyd v. Univ. of Oregon, 990 F.3d 1211, 1224 (9th Cir. 2021) (finding a sufficiently specific employment practice where "Freyd does not challenge the general practice of awarding retention raises, as the University alleges. Instead, she challenges the practice of awarding retention raises without also increasing the salaries of other professors of comparable merit and seniority."); Durante, 144 F. App'x at 606-07 ("When an employer combines subjective and objective criteria, the plaintiff is required to isolate and identify the specific offending employment practice."); Duarte v. Quality Loan Serv.

11

Corp., No. 2:17-cv-08014-ODW-PLA, 2018 WL 2121800, at *5 (C.D. Cal. May 8, 2018) (holding plaintiff failed to identify "a specific practice, policy, or selection criterion"); Guerrero v. Cal. Dep't of Corr. & Rehab., 119 F. Supp. 3d 1065, 1076–77 (N.D. Cal. 2015) (finding a plaintiff had identified a specific selection criteria by challenging a certain question in an interview process), aff'd in part, rev'd in part on other grounds, 701 F. App'x 613 (9th Cir. 2017).

Plaintiffs have therefore failed to identify a specific employment practice to support a prima facie case for their disparate impact claim.

### C. Unfair Competition, Retaliation Under FEHA and Declaratory Relief

CBS argues the Court should dismiss Plaintiffs' unfair competition claim because it is based on their discrimination claims. Mot. at 22. The Court agrees. See Aleksick v. 7-Eleven, Inc., 205 Cal. App. 4th 1176, 1185 (2012) ("When a statutory claim fails, a derivative UCL claim also fails."). At any rate, Plaintiffs do not address this claim in their Opposition. Additionally, CBS moves to dismiss Plaintiffs' retaliation claim[3] under FEHA and Plaintiffs' claim for declaratory relief. Because Plaintiffs' opposition brief does not contain any legal argument as to either claim, they have abandoned their claims, or at least have failed to provide any evidence supporting them.

### IV. CONCLUSION

The Court GRANTS CBS's motion for summary judgment in its entirety.

IT IS SO ORDERED.

Date: May 24, 2022

Dale S. Fischer
United States District Judge

---

[3] Several Plaintiffs are not asserting a retaliation claim. UF ¶¶ 238-243, 245-246, 249-252, 254, 256, 260.

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEN PIAZZA, et al.,<br>  Plaintiffs,<br><br>   v.<br><br>CBS BROADCASTING, INC. et al.,<br>   Defendants. | CV 20-2920 DSF (ASx)<br><br>JUDGMENT |

   The Court having granted the motion to dismiss filed by Defendants Television City Studios, LLC, Television City Services, LLC, Television City Productions, LLC, Michael Hackman & Associates, and Hackman Capital Partners, LLC, and having granted summary judgment in favor of Defendant CBS Broadcasting, Inc.,

   IT IS ORDERED AND ADJUDGED that Plaintiffs take nothing, that the action be dismissed with prejudice, and that Defendants recover costs of suit pursuant to a bill of costs filed in accordance with 28 U.S.C. § 1920.

Date: May 24, 2022

*Dale S. Fischer*
Dale S. Fischer
United States District Judge

# PROOF OF SERVICE

I, Brandy Williams, declare as follows: I am employed in the County of Los Angeles, State of California, I am over the age of eighteen years and am not a party to this action; my business address is 100 Wilshire Boulevard, Suite 700, Santa Monica, California 90401, in said County and State. On June 21, 2022, I served the following document(s):

NOTICE OF APPEAL

on the parties stated below, by the following means of service:

Blair J. Robinson, Esq.
Krissy Katzenstein, Esq.
Baker and McKenzie LLP
452 Fifth Avenue
New York, New York 10018
Phone: (212) 626-4100
Fax:    (212) 310-1632
Email: blair.robinson@bakermckenzie.com
Email: krissy.katzenstein@bakermckenzie.com
ATTORNEYS FOR Defendant CBS

☐ **BY UNITED STATES MAIL**: I placed a true copy in a sealed envelope or package addressed to the persons as indicated above, on the above-mentioned date, and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited with the U.S. Postal Service in the ordinary course of business in a sealed envelope with postage fully prepaid. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing set forth in this declaration. I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Santa Monica, California.

☑ **BY ELECTRONICALLY VIA EMAIL:** I served the above-entitled document electronically through electronic mail and ECF email delivery. A copy of the email and above-described attachment will be maintained in the "sent" folder in the email account in our office.

☐ **BY OVERNIGHT DELIVERY**: I enclosed the documents in an envelope or package provided by an overnight delivery carrier, all fees prepaid, and addressed to the persons as indicated above, on the above-mentioned date, and placed the envelope or package for collection and overnight delivery at an office or regularly utilized dropbox of the overnight delivery company.

☐ (STATE) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☑ (FEDERAL) I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on June 21, 2022

_/s/ Brandy Williams_
Brandy Williams